GRACEY, JUDGE:
These claims arise out of construction of a new bridge crossing the Ohio River, between West Virginia and Ohio, at St. Marys, in Pleasants County. The contract for construction of the bridge was dated November 1, 1974, the parties thereto being United States Steel Corporation and the West Virginia Department of Highways, the respondent. The required completion date was November 1, 1976. As a part of the contract, the contractor, United States Steel Corporation, was required to paint the structural steel at the shop upon fabrication and in the field upon erection. The contractor awarded a subcontract, for the field painting, to John B. Conomos, Inc.
The contract documents were placed in evidence as joint exhibits, including: (as la) the West Virginia Department of Highways Standard Specifications -Roads and Bridges - Adopted 1972; (as lb) the Contractor's Proposal in which special provisions and the signed contract are embodied; (as lc) the West Virginia Department of, Highways Supplemental Specifications dated July 1, 1974 (To Accompany Standard Specifications Adopted 1972); and (as Id) the Plans for Construction of the bridge.
Applicable paragraph items on page 2 of the Plans for Construction, so far as painting is concerned, include:
Governing Specifications
The West Virginia Department of Highways Standard Specifications, *47 Roads and Bridges Adopted 1972 as Amended By The Supplemental Specifications Of The West Virginia Department of Highways, Adopted July 1, 1974, The Contract Documents And The Contract Plans.
Painting
Shop And Field Painting Shall Be Done In Accordance With Section 615 Of The Standard Specifications, The Special Provisions And Supplemental SpecificAtions.
Shop Painting
Surfaces To Be In Contact With Concrete Shall Not Be Painted.
All Structural Steel, Except Concrete Surfaces, Shall Be Painted With Four (4) Mils Of An Inorganic Zinc Shop Primer. All Contact Surfaces Will Receive A Maximum Thickness Of 1/2 Mils Of Inorganic Zinc Coating. Areas Damaged During Shipping And
Erection Shall Be Repaired With The Shop Primer In The Field.
Field Painting
Field Coat Shall Meet Requirements Of Section 711.16 Vinyl Top Coat, 3 Mils (Dry). The Total Paint Thickness Shall Be Seven (7) Mils.
John B. Conomos, of John B. Conomos, Inc., an industrial painting, contractor, testified that he had been contacted by several steel fabricators, including the American Bridge Division of United States Steel Corporation, shortly after the bridge project was advertised for bids. After reviewing the plans and drawings he had his assistant and bookkeeper, Reta, make some calls to find out what the current prices were for materials. The memo of her telephone contact with Carboline, a paint manufacturer, listed three paints, Vinyl 711.15 and 711.16 and Zinc-Carbo Zinc 11. He said that he did not know why a price had been given on Vinyl 711.15 and conceded that he had not inquired. After making up his estimates of labor, materials, etc., he had, on the night before bid opening, provided his subcontract bid to various bidders and obtained a verbal commitment from American Bridge. The subcontract between them is dated June 20, 1975. Generally, under this field painting subcontract, the subcontractor was required to accomplish the field painting required in the prime contract including (1) clean and prepare all bolts, welds and abraded surfaces as necessary and apply touch-up paint which is inorganic zinc primer and (2) apply three (3) mils dry thickness of vinyl finish paint 711.16.
In its Notice of Claim, the claimant alleges that the specification, with reference to painting, was defective; that the two types of paint, inorganic zinc as a primer and vinyl. 711.16 as a top coat, are incompatible; that the respondent then knew or had reason to know of such incompatibility and failed to so inform the claimant; that it became necessary for the subcontractor to apply an intermediate "tie coat", at the instance of the respondent, which constituted a "constructive change order" or "extra work"; that the claimant was not granted an appropriate extension of time for completion of the contract. As a result, claimant demands: (1) an award of $145,000 in compensation for its own additional costs for labor, material, equipment, overhead and other incidental costs, (2) an award of $93,600 in reimbursement of *48 a liquidated damages delay in completion penalty of $300 per day for 312 days paid by the claimant to the respondent, and (3) an award of $350,000 on behalf of its subcontractor, John B. Conomos, Inc., for its additional costs for labor, material, equipment, overhead and other incidental costs.
In the late 1960's, paint system technology was undergoing change. Earlier, a red lead prime coat was used with an aluminum top coat. Then, a three layer vinyl system was used. And, in the early 1970's, the inorganic zinc primer with vinyl, top coat was being developed.
Conomos had little or no experience in using the vinyl over inorganic zinc paint system on a job of this magnitude. From his review of the plans and drawings, he had regarded it as a simple two-coat system, a shop coat of inorganic zinc and a field coat of 711.16 vinyl. He was unaware that an intermediate tie coat (wash coat, barrier coat) might be required to accomplish adhesion and to prevent bubbling and blistering. He attached no importance to the fact that Carboline had quoted him a price on vinyl 711.15, an intermediate vinyl paint. These numbers refer to numbered sections in the Standard Specifications. Section 711 provides the standard specifications for Paints and oils. Each of its subsections deals with a particular subject. Section 711.16 spells out the requirements of a particular vinyl top coat. Section 711.20 deals with the "Zinc-Rich System" and sets out requirements with reference to the primer, a wash coat if recommended by the paint manufacturer, and the top coat. Inorganic zinc was required as the shop coat, the primer. This subcontractor would be applying some 900 gallons of inorganic zinc in the field painting and would be applying the vinyl top coat, to meet the requirements of Section 711.16, over all. In the Special Provision appears:
"Prepainted Surfaces: All prepainted metal surfaces shall be painted with one coat of a suitable barrier coat (as recommended by the selected 2-coat paint system manufacturer), and one topcoat of the selected 2-coat system."
All of these specifications and provisions were there to be read. Surely a study of them would have forewarned the contractor and subcontractor that the intermediate coat would be necessary. The claimant's parade of expert witnesses testified that an inorganic zinc primer and a vinyl top coat meeting Section 711.16 requirements, without the intermediate coat, were incompatible, but apparently no such expert was contacted about this paint system
before bidding. It was incumbent upon the contractor and the subcontractor to be fully informed before bidding.
The bridge was not completed on November 1, 1976. It was completed on July 27, 1978. It was opened for use by the traveling public on November 18, 1977, and no liquidated damages for delays were assessed beyond that date. The delay in completion, the Court concludes from the evidence, was caused by claimant's delays in fabrication and shop painting of the structural steel. From time to time, as the contractor updated its expected work schedule, extending its expected date of *49 completion, these were the reasons stated, no reference being made to problems in field painting.
At the conclusion of the claimant's presentation of evidence, the respondent moved to dismiss the claims. That motion is sustained.
Claim disallowed.